FILED
2014 Jun-30  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **STACY REED,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CV-13-S-1268-W** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF REMAND

Claimant, Stacy Reed, commenced this action on July 9, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant contends that: (1) the ALJ erred in not finding that claimant meets Listing 4.02; (2) the ALJ erred in evaluating the side effects of claimant's medications; and (3) the Appeals Council erred in failing to find that claimant meets Listing 12.05C. Upon consideration of the record and the parties' briefs, the court finds merit in claimant's third argument, and concludes that remand is warranted for the Commissioner to give further consideration to claimant's disability status under Listing 12.05C.

Claimant asserts that the Appeals Council should have found him disabled under Listing 12.05C based on a consultative report submitted for the first time to the Appeals Council.

> When a claimant submits new evidence to the AC [*i.e.,* Appeals Council], the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. *Ingram*[*v. Commissioner of Social Security Administration*], 496 F.3d [1253,] 1262 [(11th Cir. 2007)]. Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. §

404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008) (alterations supplied).

Donald W. Blanton, Ph.D., evaluated claimant on March 28, 2012. Dr. Blanton observed, among other things, that claimant's insight was limited, and his judgment was "considered fair for work and financial type decisions."[1] Dr. Blanton also administered the Wechsler Adult Intelligence Scale IV exam, which resulted in a verbal comprehension sore of 63, a perceptual reasoning score of 71, a working memory score of 69, a processing speed score of 76, and a full scale IQ score of 64, placing claimant in the mild range of mental retardation.[2] Dr. Blanton felt as though claimant's scores were "a valid assessment of his current level of intellectual functioning as there ware no distracting factors during the testing session and he appeared to put forth good effort into his work."[3] Academic achievement testing revealed that claimant was "functionally illiterate."[4] Dr. Blanton concluded that claimant had

> marked limitations that seriously interfere with his ability to function and perform work related activities on a day to day basis in a routine work setting in the following areas:
>
> (1)   understanding detailed or complex instructions

---

[1] Tr. 508.

[2] Tr. 509.

[3] Tr. 510.

[4] *Id.*

> (2)   carrying out detailed or complex instructions
>
> (3)   remembering detailed or complex instructions
>
> (4)   using judgment in detailed or complex work related decisions
>
> (5)   respond[ing] to customary work pressures
>
> (6)   maintain[ing] attention, concentration and pace for a period of at least two hours.[5]

Dr. Blanton opined that claimant's mental retardation was a lifelong condition, and that claimant "demonstrate[d] deficits in adaptive functioning due to his mental retardation manifested prior to age 22 in the following areas: (1) Communication[;] (2) Work[;] (3) Health [and] Safety[; and] (4) Functional Academic Skills."[6]

The Appeals Council received Dr. Blanton's report and made it part of the administrative record.[7]   Even after considering the report, however, the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision," and it accordingly denied claimant's request for review.[8]   Claimant argues that decision was in error, because he believes Dr. Blanton's report establishes his disability under Listing 12.05C, which addresses mental retardation.

Listing 12.05C states as follows:

---

[5] *Id.* (alterations supplied).

[6] Tr. 511 (alterations supplied).

[7] Tr. 5-6.

[8] Tr. 1 (alteration supplied).

*Mental Retardation.*  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[. . . .]

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.05 (listings) (all italics in original).

The Commissioner does not dispute (nor could she) that claimant has IQ scores between 60 and 70 and a physical impairment imposing an additional and significant work-related limitation of function.[9]  Indeed, the ALJ found claimant to be limited to a reduced range of sedentary work due to the severe limitations of congestive cardiomyopathy, degenerative disc disease of the cervical spine, obesity, hypertension, and asthma.[10]  Even so, the Commissioner argues that claimant has failed to satisfy the preliminary criteria for the listing because he has not demonstrated deficits in adaptive functioning.

The Social Security Administration's Program Operations Manual

---

[9] Doc. no. 22 (Commissioner's brief), at 15-16 ("For the purposes of this response, the Commissioner assumes Plaintiff's full scale IQ score of 64 is valid and that he has an additional impairment that causes a significant work-related functional limitation.").

[10] Tr. 17.

> System (POMS) states that the phrase "adaptive functioning" refers to "the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age." POMS DI 24515.056(D)(2). Similarly, the American Psychiatric Association states that the phrase refers to how effectively an individual copes with the common demands of life and how well the individual meets the standards for personal independence expected of someone in her particular age group, sociocultural background, and community setting. *Diagnostic and Statistical Manual of Mental Disorders IV–TR*, at 42 (4th ed. 2000); *see also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (explaining that the phrase "adaptive functioning" in Listing 12.05 refers to an individual's ability to cope with the challenges of ordinary life).

*Hickel v. Commissioner of Social Security*, 539 F. App'x 980, 983 n.4 (11th Cir. 2013). Claimant contends that Dr. Blanton's diagnosis of mild mental retardation necessarily encompasses a finding of deficits in adaptive functioning.[11] It is true that, as a result of his IQ scores, claimant is entitled to a *presumption* that he experienced deficits in adaptive functioning prior to age 22. *Hodges v. Barnhart,* 276 F.3d 1265, 1266 (11th Cir. 2001) ("[A]claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two.") (alteration supplied). That presumption, however, is rebuttable. *Id.* at 1268-69. "'[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other

---

[11] *See* doc. no. 19 (claimant's brief), at 7 ("According to the Diagnostic and Statistic Manual of Mental Disorders, Fourth Edition (DSM), the diagnosis of mild mental retardation cannot be made in the absence of adaptive deficits. (DSM, p. 46). Therefore, Dr. Blanton's diagnosis presumes the presence of adaptive deficits.").

evidence in the record on the claimant's daily activities and behavior.'" *Hickel*, 539 F. App'x at 983-84 (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)) (alteration supplied). *See also Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986) (holding that, if there is a question as to the validity of the IQ test results, "[t]he ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior") (alteration supplied).

Here, the other evidence in the record concerning claimant's daily activities and behavior is mixed. On the one hand, Dr. Blanton's report stated that claimant's IQ scores were accurate, that he was functionally illiterate, and that he exhibited limited insight. Dr. Blanton also opined that claimant had marked limitations in at least work-related six functional areas, and that he had "deficits in adaptive functioning" in the areas of communication, work, health and safety, and functional academic skills. The report constitutes strong evidence to support the presence of adaptive limitations. Although Dr. Blanton was only a one-time, consultative examiner, his opinion still is entitled to some weight, insofar as it is well-reasoned and consistent with the record. *See* 20 C.F.R. § 404.1527(d) (providing that, in considering what weight to give any medical opinion, regardless of whether it is from a treating or non-treating physician, the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the

doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors).

On the other hand, claimant testified that he completed the twelfth grade in school, and there is no indication from his school records that he was in special education classes, although he did receive low grades, and he had to attend summer school to pass English during his twelfth-grade year.[12]  Claimant also testified to a varied, but fairly significant, work history, although most of the work he identified was unskilled.[13]  In his Function Report, he reported some daily activities, although they were fairly limited.  He stated that he could take care of his own personal hygiene needs, make sandwiches, and do laundry or cleaning for approximately 20 minutes at a time.  He could drive, go out alone, shop for food, pay bills, and count change, but he could not use a checkbook or savings account.  The only social activity he listed was church.[14]

Given this conflicting evidence regarding the extent of claimant's adaptive functioning, the court concludes that further development of the record is necessary.  Remand is warranted for further consideration of Dr. Blanton's report, and for the

---

[12] Tr. 203-04.

[13] *See* Tr. 32-37, 60.

[14] Tr. 178-83.

attainment of any additional medical or factual evidence necessary for the further evaluation of claimant's adaptive limitations.  After evaluating any additional evidence obtained, the ALJ is directed to enter findings about the extent of claimant's adaptive limitations.

Based on the foregoing, the decision of the Commissioner is REVERSED, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk of Court is directed to close this file.

DONE this 30th day of June, 2014.

United States District Judge